UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT GREEN BANK,  )<br>    *Plaintiff*,  )<br>                                           )<br>v.  )<br>                                           )<br>POSIGEN, PBC f/k/a POSIGEN, INC.  )<br>BID ADMINISTRATOR LLC, BID III  )<br>POSIGEN AGGREGATOR LP, BII BID  )<br>US HOLDINGS LLC,  )<br>    *Defendants*.  ) | 3:25-CV-1841 (SVN)<br><br><br><br><br>November 12, 2025 |

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

Sarala V. Nagala, United States District Judge.

By complaint dated October 30, 2025, Plaintiff Connecticut Green Bank commenced this action alleging breach of contract against Defendant PosiGen PBC; tortious interference with contract against Defendants BID Administrator LLC, BID II PosiGen Aggregator LP, and BII BID US Holdings LLC (together, "Brookfield"); and fraudulent transfer against all Defendants. Compl., ECF No. 1. Contemporaneously with the filing of its complaint, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction on its breach of contract claim against PosiGen PBC, ECF No. 2, which the Court previously denied in part, insofar as it requested an *ex parte* TRO. *See* Order, ECF No. 6. Following notice to Defendants, the motion has been fully briefed, and the Court held a hearing on the motion on November 12, 2025. For the reasons explained below, the Court DENIES Plaintiff's motion in full and declines to issue the requested preliminary injunctive relief.

## I.     BRIEF FACTUAL BACKGROUND

In the interest of expediency, the Court presumes the parties' familiarity with Plaintiff's allegations.[1]

In brief, Plaintiff alleges that PosiGen PBC, a solar energy company, borrowed substantial funds from Plaintiff pursuant to contractual agreements that imposed, among other things, restrictions on PosiGen PBC's ability to incur additional indebtedness, except for certain categories of debt expressly permitted by the contract (the "PBC Debt Restrictions"). *See* Compl. ¶ 23. Plaintiff alleges that PosiGen PBC's obligation to repay the amounts owed to Plaintiff is secured by a first priority lien on, among other things, certain Generac battery storage systems and any funds generated from such systems. *Id.*

Certain subsidiaries of PosiGen PBC, known as the "Backleverage Entities," were funded with approximately $600 million borrowed from Defendant Brookfield, along with approximately $30 million borrowed from Plaintiff pursuant to a second lien credit agreement. *Id.* ¶ 30. On or around August 4, 2025, the Backleverage Entities failed to make certain required interest payments to Brookfield, which constituted an event of default under their agreements with Brookfield and triggered events of default under the agreements between Plaintiff and PosiGen PBC. *Id.* ¶ 35. Following this default, Plaintiff notified PosiGen PBC that it was exercising its contractual right to accelerate all obligations due under its agreements with PosiGen PBC. *Id.* ¶ 36. In mid-August, Brookfield appointed an independent manager to conduct all business on behalf of the Backleverage Entities, and assumed control over the funding of PosiGen PBC and various subsidiaries. *Id.* ¶¶ 40–41. On or around August 25, 2025, PosiGen PBC terminated many of its employees. *See* Pl. Exhibit C, ECF No. 1-3 at 1–6. Brookfield, in turn, provided the companies

---

[1] The following facts, set forth in Plaintiff's complaint, are generally undisputed.

with enough cash to survive until October 24, 2025.  Compl. ¶ 43.  Plaintiff alleges that, if PosiGen PBC was not funded past that date, it would face immediate shutdown or the prospect of filing for bankruptcy.  *Id.* ¶ 48.

To avoid those possibilities, the parties attempted to negotiate a waiver to the PBC Debt Restrictions to allow PosiGen PBC to accept additional indebtedness from Brookfield under certain conditions, through a Bridge Loan.  *Id.* ¶ 45.  Those pre-suit negotiations ultimately failed.  *Id.* ¶ 49.  Beginning October 28, 2025, PosiGen PBC began to unilaterally accept a Bridge Loan on a weekly basis from Brookfield to support what remains of its ongoing operations, without Plaintiff's consent.  *Id.* ¶ 51.

Plaintiff's breach of contract claim alleges that PosiGen PBC entered into the Bridge Loan and incurred debt obligations under the Bridge Loan in violation of the PBC Debt Restrictions, which Plaintiff claims was a material breach of PosiGen PBC's agreements with Plaintiff.  *Id.* ¶ 57.  Plaintiff alleges it has suffered, and will continue to suffer, damages as a result of PosiGen PBC's breach of the PBC Debt Restrictions; as relief, Plaintiff seeks avoidance of the Bridge Loan and any liens issued in connection with it and, alternatively, damages.  *Id.* ¶¶ 58–60.  According to Plaintiff, as of the filing of the complaint, PosiGen PBC owes Plaintiff approximately $2 million in outstanding principal; an unspecified amount accrued but unpaid interest; and "material costs and expenses incurred" by Plaintiff following PosiGen PBC's default on the agreements.  *Id.* ¶ 24.

Plaintiff requests that the Court issue a TRO and preliminary injunction enjoining PosiGen PBC from receiving or utilizing additional loan proceeds from Brookfield or otherwise further violating the parties' contract.  Mot. for TRO and Prelim. Inj., ECF No. 2.  PosiGen PBC opposes the motion.  ECF No. 64.  Brookfield joins PosiGen's opposition, contending that because any

injunctive relief will affect it as a party to the Bridge Loan, its opposition should be considered by the Court. ECF No. 65.

## II. LEGAL STANDARD

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). Preliminary injunctions can be either prohibitory or mandatory. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.</i>*, 883 F.3d 32, 36–37 (2d Cir. 2018) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.</i>*, 60 F.3d 27, 34 (2d Cir. 1995)). While the typical preliminary injunction is "prohibitory" and seeks only to maintain the *status quo* pending a trial on the merits, a "mandatory" injunction *alters* the *status quo* by "commanding some positive act." *Id.* at 35.

"[T]his distinction is important because [the Second Circuit has] held that a mandatory injunction should issue 'only upon a *clear* showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc.*, 60 F.3d at 34 (emphasis added) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). A heightened standard is imposed for mandatory injunctions, in part, "because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.2 (3d ed. 2025)). "The 'clear' or 'substantial' showing requirement—the variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Tom Doherty Assocs.*, 60 F.3d at 34 (citation omitted). In addition, if the requested injunction is mandatory, the movant must "make a 'strong

showing' of irreparable harm . . . , in addition to showing that the preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation omitted); *see also Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (requiring, for issuance of a preliminary injunction, that the balance of equities tips in the movant's favor and that an injunction is in the public interest).  Among these elements, "'irreparable harm is the single most important prerequisite for a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citation and quotation marks omitted).

### III. DISCUSSION

#### A. Mandatory or Prohibitory Injunction

Although this is a close question due to the weekly nature of the Bridge Loans at issue, the Court concludes that Plaintiff is seeking a mandatory injunction.  At the time that the complaint and request for injunctive relief were filed, the first Bridge Loan had already been entered into by PosiGen PBC and Brookfield.  Thus, insofar as Plaintiff's motion for injunctive relief sought an order that PosiGen PBC be "enjoined from . . . utilizing or receiving any further loan proceedings from debt incurred in violation of" Plaintiff's agreements with it, *see* Proposed Order, ECF No. 2-7, Plaintiff is requesting that the Court command a positive act by PosiGen PBC:  that it not utilize loan proceeds it had *already* received by that point.  The Court thus believes that the requested injunction is, at least in part, mandatory.

The Court acknowledges that each Bridge Loan lasts only one week, and subsequent Bridge Loans have been entered into on a weekly basis.  Thus, it is possible to characterize the request that PosiGen PBC and Brookfield be prohibited from entering into a *future* Bridge Loan as a prohibitory injunction, that would preserve the *status quo* between the end of one Bridge Loan

5

and the start of another. As the Court assumes in its discussion below that Plaintiff meets even the heightened standard for likelihood of success on the merits that is required for a mandatory injunction but nonetheless concludes the injunction cannot be issued, however, this distinction is immaterial.

    B.  <u>Clear Likelihood of Success on the Merits</u>

As an initial matter, the Court assumes—without deciding—that that Plaintiff has a substantial likelihood of prevailing on the merits of its breach of contract claim against PosiGen PBC, based on its allegations that PosiGen PBC accepted the Bridge Loan without Plaintiff's consent, in violation of the PBC Debt Restrictions.

To succeed on a breach of contract claim under Connecticut law, Plaintiff must show: (i) the existence of a contract; (ii) that it performed under the contract; (iii) that PosiGen PBC breached the contract; and (iv) that Plaintiff suffered damages resulting from the breach. *See A.H. Harris & Sons, Inc. v. Naso*, 94 F. Supp. 3d 280, 301 (D. Conn. 2015). Most of these elements do not appear to be in dispute. Indeed, the record establishes—and the parties agreed at oral argument—that the contract is valid and enforceable, that the contract forbids PosiGen PBC from incurring additional indebtedness not contemplated in the agreement, and that the Bridge Loan is effectively a breach of that agreement.

There remains an open question as to whether Plaintiff has shown that it suffered damages as a result of the particular breach alleged—breach of the PBC Debt Restrictions clause. But even if the Court assumes *arguendo* that Plaintiff has plausibly demonstrated damages to succeed on its breach of contract claim against PosiGen PBC, an injunction is inappropriate under these circumstances for the reasons discussed below.

### C. Irreparable Harm

The Court concludes that it lacks authority to issue the requested injunctive relief, which is premised on the theory that Plaintiff will suffer irreparable harm absent an injunction, given PosiGen PBC's undisputed insolvency.

Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." *See Wisdom Imp. Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted). In its briefing, Plaintiff makes two principal arguments in support of its allegations of imminent harm: (i) that PosiGen PBC's insolvency is sufficient to establish a finding of irreparable harm, as PosiGen PBC lacks the requisite assets to repay Plaintiff's full investment and the collateral securing that investment is deficient; and (ii) the funds advanced under the Bridge Loan—and Brookfield's consequential control of PosiGen PBC's operational and financial affairs—disrupts the company's capital structure and Plaintiff's lien priority status, thereby diminishing Plaintiff's prospect of recovering what is owed.

The Second Circuit has recognized an insolvency exception to the general rule that monetary injuries cannot constitute irreparable harm. *See, e.g., Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) (finding irreparable harm where a company's insolvency threatened a lender's ability to collect damages). But this exception has been cast into doubt by the U.S. Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), decided a mere two months after *Brenntag*. In *Grupo Mexicano*, the plaintiffs accelerated the obligations due to them under certain contracts and filed suit for the amount due under those notes. 527 U.S. at 312. The plaintiffs contended that the defendant was "at risk of insolvency, if not insolvent already," and yet was dissipating its most significant asset and preferring certain other creditors over the plaintiffs. *Id.* The plaintiffs sought

7

a preliminary injunction restraining the defendants from transferring the assets in question, contending that the defendants' actions would "frustrate any judgement" the plaintiffs might ultimately obtain on their breach of contract claim. *Id.* The district court issued both a TRO and a preliminary injunction enjoining the defendants from dissipating, disbursing, or otherwise affecting the plaintiffs' rights in the asset. *Id.* at 312–13. The Second Circuit affirmed the district court. *Id.* at 313.

In a decision that focuses on the role of a federal court's equity jurisdiction, the Supreme Court held that the district court had no power to issue the preliminary injunction. *Id.* at 318–33. The Supreme Court explained that the general equitable powers of federal courts include the authority to issue preliminary injunctions where the intermediate relief sought is of the same character as that which may finally be granted. *Id.* at 326. There, because the breach of contract claim sought monetary damages, the preliminary equitable relief sought did not match the ultimate relief sought. Additionally, the Court explained that allowing a preliminary injunction of the nature granted by the district court would render the prejudgment remedy procedure of Federal Rule of Civil Procedure 64 "a virtual irrelevance" and encourage a "'race to the courthouse' in cases involving insolvent or near-insolvent debtors," which threatened to disrupt the "balance between a debtor's and a creditor's rights which has been developed over centuries through many laws—including those related to bankruptcy, fraudulent conveyances, and preferences." *Id.* at 330–31. The Supreme Court thus reversed the Second Circuit's decision and held that the district court "had no authority to issue a preliminary injunction preventing [the defendants] from disposing of their assets pending adjudication of [the plaintiffs'] contract claim for money damages." *Id.* at 333.

8

Although the Second Circuit has not "re-visit[ed] the 'insolvent' exception outlined in *Brenntag*," "other courts have interpreted *Grupo* [*Mexicano*] to stand for the principle that courts cannot issue preliminary injunctions based solely on the insolvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages.'" *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 393 (E.D.N.Y. 2016) (collecting cases). Courts are not precluded, however, from issuing an injunction where the underlying claims sound in equity (or a combination of law and equity). *Id.* at 393; *see also U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999) ("[W]e must begin with an analysis of the claims in suit to determine whether they seek cognizable relief in equity involving assets of the defendant.").

Under this framework, the question is not whether PosiGen PBC is insolvent; rather, it is how Plaintiff frames its claims. Plaintiff's complaint here seeks avoidance of the Bridge Loan and monetary damages for its breach of contract claim. *See* Compl, ¶¶ 52–60. Monetary damages, of course, are legal, not equitable, in nature. *See Citigroup Inc. v. VDN Sys., Inc.*, No. 08-CV-7527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) ("[A]ctions seeking damages for breach of contract are traditionally considered to be legal in nature."). And until oral argument, Plaintiff did not characterize its request for avoidance of the Bridge Loan as equitable in nature, nor argue in its papers that its breach of contract claim seeks any equitable relief.[2] Thus, the Court considers this argument waived. *See United States v. Marrero*, No. 22-2030, 2024 WL 1253643, at *3 n.3

---

[2] At oral argument, Plaintiff's counsel argued, for the first time, that Plaintiff's request for avoidance of the Bridge Loan was, in fact, a request for an equitable remedy, and that *Grupo Mexicano* does not preclude its requested relief because Plaintiff has an undisputed equitable interest in the $2 million defaulted loan it provided PosiGen PBC. The Court need not entertain arguments raised for the first time at oral argument. *See Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 62 (2d Cir. 2020) (summary order). And in any event, Plaintiff's breach of contract claim here is based on PosiGen PBC's acceptance of the Bridge Loan from Brookfield, not PosiGen PBC's default on the $2 million loan Plaintiff provided it. The Court thus does not construe the $2 million deficiency as the relevant debt to consider when evaluating whether Plaintiff's claims in this litigation seek equitable or legal remedies. Whether Plaintiff suffered damages from PosiGen PBC's breach of the PBC Debt Restrictions is a contested matter at this juncture.

(2d Cir. Mar. 25, 2024) (summary order) ("arguments not raised in a principal brief—let alone not raised even in the reply—are considered waived").

In an attempt to overcome the impediment of *Grupo Mexicano*, Plaintiff argues that the Second Circuit confirmed *Brenntag* remains good law in *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 F. App'x 779, 781 (2d Cir. 2010) (summary order), decided after *Grupo Mexicano*. But there is no indication from the Second Circuit's ruling in *CRP/Extell Parcel I* that it was presented with an argument concerning the viability of the insolvency exception after *Grupo Mexicano*. Moreover, one of the claims at issue in *CRP/Excell Parcel* sought rescission, a typical equitable remedy that could warrant a court's exercise of its equitable power to grant injunctive relief. *See* Compl., *CRP/Extell Parcel I, L.P. v. Cuomo et al*, No. 1:10-cv-03801 (S.D.N.Y. May 10, 2010), ECF No. 1 at 52–55; *Lenel Sys. Int'l, Inc. v. Smith*, 106 A.D.3d 1536, 1537 (4th Dep't 2013) (recognizing that recission is an "equitable remedy," which "rests on the equitable principle that a person shall not be allowed to enrich himself [or herself] unjustly at the expense of another") (internal citation omitted); *see also* 1 Conn. Contract Litig. § 8.03[7] (describing rescission as an equitable remedy for breach of contract). The other cases Plaintiff cites in support of its argument are district court opinions that are not binding on this Court and which, likewise, do not examine the effect of *Grupo Mexicano* on the viability of the insolvency exception. *See* Pl.'s Reply Br., ECF No. 66 at 7–8. Finally, the Court does not find that *Grupo Mexicano* is factually distinguishable. Here, like in *Grupo Mexicano*, Plaintiff has not yet obtained a judgment in its favor on its breach of contract claim.

Thus, the Court finds that it lacks authority to issue the requested TRO or preliminary injunction on Plaintiff's breach of contract claim.

D. <u>Balance of the Equities/Public Interest</u>

Although the Court's holding above is dispositive of Plaintiff's motion, the Court also addresses the balance of the equities and public interest factors together, in the interest of completeness. Plaintiff has not demonstrated that these factors weigh in its favor, given that issuance of the requested injunctive relief would spell the immediate shutdown of PosiGen PBC and its subsidiaries and render its customers unable to receive any service on their solar energy systems. PosiGen PBC proffers evidence illustrating that the Bridge Loan is needed to support an orderly wind-down of the business, including transitioning the company's solar panel system servicing business. *See* Pugh Decl., ECF No. 64-1 ¶ 18. PosiGen PBC reports that it has already put the funds from the Bridge Loan to use by transitioning some of its servicing functions, such as backing up customer data and giving the new, prospective servicer access to necessary data to operate the servicing business. *Id.* Additionally, PosiGen PBC explains that without this financing, it will be unable to meet payroll of its remaining employees; insurance and maintenance obligations would lapse; and customers would be left without support, among other issues. *Id.* ¶ 21. Although the Court acknowledges that there is a public interest in enforcing contracts and cautions that this decision should not be viewed as an endorsement of PosiGen PBC's clear breach of the PBC Debt Restrictions, the Court finds the countervailing public interest—allowing PosiGen PBC to wind down its affairs in a somewhat orderly fashion on a week-by-week basis until a more long-term plan can be negotiated—more compelling.

**IV.   CONCLUSION**

For the reasons set forth in this ruling, Plaintiff's motion for a temporary restraining order and preliminary injunction is denied. In light of this holding, the Court denies as moot Plaintiff's

motion to expedite discovery, which had sought limited expedited discovery in support of its motion for preliminary injunctive relief.

**SO ORDERED** at Hartford, Connecticut, this 12th day of November, 2025.

                               */s/ Sarala V. Nagala*
                               SARALA V. NAGALA
                               UNITED STATES DISTRICT JUDGE